**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JUST BORN, INC., Plaintiff, v. MAILLO CONFECTIONS LLC and THE SNACKATERE NJ INCORPORATED, Defendant(s). | **Civil Action No. 26-cv-04606 (SRC)** **OPINION & ORDER** |

**CHESLER, District Judge**

This matter comes before the Court by way of Defendants Maillo Confections LLC and The Snackatere NJ Incorporated ("Defendants") Motion to Dismiss the Complaint (the "Motion"), (Dkt. No. 12). Plaintiff Just Born, Inc. ("Plaintiff") opposed the motion, (Dkt. No. 32). Defendants filed a brief in reply, (Dkt. No. 40). For the reasons set forth below, the Motion will be **DENIED.**

## I. PROCEDURAL HISTORY

On April 27, 2026, Plaintiff filed a complaint against Defendants alleging infringement of Plaintiff's rights on its trademarks and trade dress under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), dilution of Plaintiff's rights in its world-famous trademarks and trade dress under the Trademark Dilution Revision Act, 15 U.S.C. § 1125(c), dilution under N.J.S.A. 56:3-13.20, and unfair competition under N.J.S.A. 56:4-1 et seq and New Jersey common law. (Dkt. No. 1).

Defendants moved to dismiss Plaintiff's Complaint on June 29, 2026. (Dkt. No. 12). Plaintiff filed opposition on July 27, 2026. (Dkt. No. 32). Defendants filed a reply brief on August 3, 2026. (Dkt. No. 40).

Through their Motion, Defendants seeks a dismissal of Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted or, in the alternative, Motion for More Definitive Statement pursuant to Federal Rule of Civil Procedure 12(e).

## II. FACTUAL BACKGROUND

Plaintiff is a Pennsylvania corporation that has manufactured and sold PEEPS marshmallow candies since 1954. Compl. ¶¶ 18-19. Plaintiff introduced a bunny-shaped marshmallow in 1979 and has continued to sell the product since that time. *Id.* Plaintiff owns multiple trademark registrations covering its bunny-shaped marshmallow in connection with various goods. *Id.* at ¶ 21.

According to Plaintiff, the mark consists of a simplified rounded silhouette of a front-facing bunny with a face formed of three dots and a v-shaped pair of rounded ears centrally placed on the head (the "Bunny Design"), and is used in commerce both as a two-dimensional mark applied to goods or their packaging and as the configuration of candy and licensed goods to indicate that they originate from or are licensed and authorized by Plaintiff. *Id.* at ¶¶ 24-25. Plaintiff also claims trade dress rights in its packaging which generally consists of marshmallows arranged in groups of four within a rectangular white paper tray wrapped in pastel-colored plastic packaging with a repeating bunny-shaped print and a transparent window on the right side or top through which clusters of four candies can be seen. *Id.* at ¶ 27.

Plaintiff alleges that the Bunny Design has acquired widespread commercial recognition, and further alleges that Plaintiff's PEEPS brand candies are consistently the most popular non-chocolate Easter candy, and have maintained that position for two decades, with over 150 million candies in the Bunny Design sold in each of the past three years. *Id.* at ¶¶ 28-35.

In May 2025, Defendants announced via its website that they planned on launching a line of seasonal marshmallows including bunny-shaped marshmallows. *Id.* at ¶ 51. On July 1, 2025, Plaintiff sent Defendants a cease and desist letter asserting its trademark rights and objecting to the launch of the proposed bunny-shaped marshmallows. *Id.* ¶ 52. Counsel for the respective parties continued communications through November 2025 regarding Plaintiff's infringement concerns. *Id.* ¶ 53. Plaintiff alleges that it advised Defendants that any product it launches must be of a significantly modified design that is not confusingly similar to the Bunny Design, and failure to do so would result in enforcement of Plaintiff's rights. *Id.* Plaintiff further alleges that Defendants ultimately made no substantial changes to design and, in January 2026, began to manufacture, distribute and sell marshmallows in a bunny shape (the "Mallow Bunny"). *Id.* ¶¶ 53-54. Plaintiff alleges that the products are sold online through Amazon and in retail stores, including Albertson, Wegmans, Price Chopper, ShopRite, independent health food stores, and other retail grocery and food stores. *Id.* ¶ 55.

Plaintiff further alleges that Defendants packaged the Mallow Bunnies in rectangular white paper trays wrapped in pastel-colored packaging with a transparent window displaying four marshmallows, and that multipack versions of the product feature a repeating bunny pattern that is similar to the packing of Plaintiff's product. *Id.* ¶¶ 59-61. Plaintiff also alleges that at least some of the Mallow Bunnies were distributed with three-dot facial features that are similar to the

Bunny Design. *Id.* ¶ 62.

Finally, Plaintiff contends that the Mallow Bunnies closely resemble the Bunny Design because both products feature a simplified rounded silhouette of a front-facing bunny with a v-shaped pair of rounded ears centrally placed on the head, are formed of white marshmallow coated with pastel-colored granulated sugar, and are of the same size and the same weight. *Id.* ¶ 67. Plaintiff argues that there are various similarities in the two products, namely that they have substantially similar visual impression, they are the same size and weight, have a similar heft and feel in the hand, and have similar colors. *Id.* ¶¶ 68-71.

Defendants brought the instant motion seeking to dismiss the Complaint on the basis that Plaintiff's marks are functional and thus the alleged trade dress rights must be invalidated, and that the Complaint fails to plead allegations to support its claims. Defendants filed the instant motion on June 29, 2026. (Dkt. No. 12) ("Defs.' Br."). Plaintiff filed opposition on July 27, 2026. (Dkt. No. 32) ("Pl.'s Opp."). Defendants filed a reply brief on August 3, 2026. (Dkt. No. 40) ("Defs.' Rep.").

## III. LEGAL STANDARD

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a Rule 12(b)(6) motion, the Court must accept as true the well-pleaded facts of a complaint and any reasonable inference that may be drawn from those facts

but need not credit conclusory statements couched as factual allegations. *See id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The issue before the Court on a Rule 12(b)(6) motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *Id.* at 1426. The Court, however, may properly consider documents that form the basis of a claim and documents that are "integral to or explicitly relied upon in the complaint." *Id.* (citations omitted).

## IV. DISCUSSION

### A. Whether the Bunny Design is Functional or Generic is a Fact-Intensive Inquiry that Cannot be Resolved on a Motion to Dismiss (Counts I and II)

Defendants argue that Plaintiff's claims of trademark infringement based on both the '913 and '165 Registrations (Counts I and II) must be dismissed as each of those registrations are invalid. Defs.' Br. at 6. Defendants contend that both registrations cover a rabbit design, and that the rabbit shape is one of the most recognizable seasonal, cultural and commercial symbols of Easter. *Id.* at 7. Thus, Defendants argue that the rabbit shape is essential to the purpose of the article, making it functional, and rendering the registrations invalid. *Id.* Defendants also argue that the shape of the Bunny Design is useful for purchasers to hold the character at its larger "belly" while allowing them to hold and eat the product's ears and head, thus further making the design functional. *Id.* at 8. Defendants further contend that if the alleged functional element of the Bunny Design (the rabbit shape) were granted protection, Plaintiff would have an impermissible monopoly over rabbit-shaped Easter candy. *Id.* Defendants also contend that Plaintiff's

registrations are generic in the seasonal candy industry and thus unprotectable, and any attempts to thwart the sales of similar products are just an attempt to suppress fair competition in the market. *Id.* at 9-12.

Plaintiff responds that because it has a registered trade dress, it is presumed nonfunctional, and Defendants fail to meet their burden to show functionality because the bunny shape does not improve the function or manufacture of its products. Pl.'s Opp. at 9. Although Plaintiff contends that Defendants have failed to provide any evidence to show that the Bunny Design makes the product functional, because of the presumption afforded to registered marks, the Court is precluded from considering any evidence which Defendants seek to offer that would tend to demonstrate functionality in its consideration of a motion to dismiss. As the Court indicated earlier, the Court is required to accept all well pleaded facts that are not conclusory and that are not extrinsic evidence. *See In re Burlington*, 114 F.3d at 1426. As to genericness, Plaintiff argues that because the question of "genericness" is a fact question, it would be inappropriate for the Court to make such a determination on a motion to dismiss. Pl.'s Opp. at 14.

"In general terms, a product feature is functional, and cannot serve as a trademark, if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *TrafFix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 23, 32 (2001) *(*quoting *Qualitex Co. v. Jacobson Prods. Co*., 514 U.S. 159, 165 (1995)). "A functional feature is one the "exclusive use of [which] would put competitors at a significant non-reputation-related disadvantage." 514 U.S. at 165. "A feature is also functional when it is essential to the use or purpose of the device or when it affects the cost or quality of the device." *Qualitex* at 33. "A design is functional if it is useful for anything beyond branding." *PIM Brands Inc. v. Haribo of Am. Inc.*, 81 F.4th 317, 321

(3d Cir. 2023). "In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional." 15 U.S.C. § 1125(a)(3). "The presumption of validity that accompanies registered trade dress 'has a burden-shifting effect, requiring the party challenging the registered mark to produce sufficient evidence' to show that the trade dress is invalid by a preponderance of the evidence. *Retail Servs., Inc. v. Freebies Publishing,* 364 F.3d 535, 542 (4th Cir. 2004).

As an initial matter, the question of functionality requires a fact-intensive inquiry. The parties dispute whether the Bunny Design is inherent to a rabbit-shaped marshmallow product or whether the same has any utility or manufacturing benefits. Resolving this dispute would require the Court to determine the purpose served by the Bunny Design and to what extent the design affects the cost or quality of Plaintiff's product. *TrafFix*, 532 U.S. at 32. These are factual questions that the Court cannot resolve on the pleadings alone. Further, at this stage, the Court cannot resolve these questions by weighing the parties' competing evidence. Rather, in deciding a Rule 12(b)(6) motion, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). While Defendants may ultimately establish functionality, the Court cannot make that determination by considering extrinsic evidence on a motion to dismiss. Indeed, some of the cases cited by the parties support the same. For example, in *Sweet St. Desserts, Inc. v. Chudleigh's Ltd*., defendant was able to overcome the presumption to show the alleged trade dress was functional but this was with a developed factual record at summary judgment motion and not on a motion to dismiss. 655 F. App'x 103 (3d Cir.

2016). Here, no comparable factual record exists. Given the presumption of nonfunctionality of registered marks and Plaintiff's well-pleaded allegations, Defendants' motion to dismiss based on functionality must be denied.

The same is true of Defendants' argument that Plaintiff's registrations are invalid because they are generic. Plaintiff is correct that because the question of "genericness" is a fact question, it is inappropriate for the Court to resolve this at the motion to dismiss stage. *See E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 192 (3d Cir. 2008) (finding that "[w]hether '[a mark]' is generic or descriptive, and whether that term has acquired secondary meaning, are questions of fact." Further, "[t]he jurisprudence of genericness revolves around the primary significance test, which inquires whether the primary significance of a term in the minds of the consuming public is the product or the producer." *Id.* quoting *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 292-93 (3d Cir. 1986). The issue of whether the mark is generic is fact-specific and cannot be considered on a motion to dismiss. Thus, because the resolution of both the questions of functionality and genericness requires factual determinations that are not available based on the current record, dismissal of Counts I and II on either ground is premature at this stage.

Accordingly, Defendants' motion to dismiss Counts I and II is denied.

### B. Plaintiff Adequately Pleads its Product Design Trade Dress and Unregistered Packaging Trade Dress Claims (Counts III and IV)

Defendants seek dismissal of Plaintiff's product design trade dress claim (Count III) and unregistered packaging trade dress claim (Count IV).

Defendants argue that Plaintiff's product design trade dress infringement claims fail due to multiple pleading defects. Defendants repeat their arguments about Plaintiff's registrations being functional and thus not able to be protected. Defs.' Br. at 13. Defendants also argue that

Plaintiff's allegations regarding the elements included in the Bunny Design contradict one another because Plaintiff cannot articulate a protectable trade dress without broadly defining it to include anything that resembles the head of a rabbit. *Id.* at 13-16. Defendants contend that Plaintiff has not adequately alleged that its registrations are inherently distinctive or that the Bunny Design has acquired secondary meaning. *Id.* at 22. Defendants further argue that Plaintiff has not sufficiently pleaded that there is a likelihood of confusion. *Id.* at 16-21.

Plaintiff responds that there is nothing functional about the shape of Plaintiff's product and that its description of its Bunny Design is sufficiently clear. Pl.'s Opp. at 16-17. As to secondary meaning, Plaintiff argues that its Complaint sufficiently pleads that the Bunny Design is famous and strong, and more than satisfies any requirement to allege secondary meaning in support of Count III of the Complaint. *Id.* at 18.

To plead trade dress infringement, a complaint must allege that: "(1) the allegedly infringing design is non-functional; (2) the design is inherently distinctive or has acquired secondary meaning; and (3) consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product." *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 357 (3d Cir. 2007) (citing *Shire US Inc. v. Barr Lab'ys Inc.*, 329 F.3d 348, 353 (3d Cir. 2003)).

As an initial matter, the Court is satisfied the Complaint sufficiently identifies the product configuration for which Plaintiff seeks protection. Specifically, Plaintiff defines its Bunny Design as "a rounded silhouette of a front-facing bunny with a face formed of three dots and a v-shaped pair of rounded ears centrally placed on the head." Compl. ¶ 2. Although Defendants try to characterize the pleading as contradictory because Plaintiff's description of the Bunny Design

is for a two-dimensional representation and Plaintiff also seeks protection of a three-dimension product configuration, the Court is satisfied that Plaintiff's pleadings is sufficient and clear in describing the design for which it seeks protection. Overall, the Court is satisfied that the Complaint provides Defendants with adequate notice of what Plaintiff seeks to protect. *See Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 309 (3d Cir. 2014) (finding that "it is the plaintiff's duty to articulate the specific elements which comprise its distinct dress" and that Plaintiff must "give Defendants adequate notice of what overall look it wishes to protect" in order to survive a motion to dismiss).

Regarding functionality, although Plaintiff bears the burden of proving nonfunctionality as to its unregistered trade dress, *see* 15 U.S.C. § 1125(a)(3), this burden does not change the Court's limited inquiry at the motion to dismiss stage. As explained, *supra*, the Court must assess whether Plaintiff has plausibly alleged a nonfunctional trade dress based on its pleadings alone; the Court may not weigh extrinsic evidence. Accordingly, because the Court cannot consider any evidence for or against functionality of the unregistered trade dress, and the question of functionality is a fact-specific inquiry, the Court cannot dismiss Count III based on the question of functionality.

As to the question of secondary meaning, Plaintiff's allegations are not merely conclusory. The claims in the Complaint are adequately supported: "In sum, Plaintiff's long standing fame and strong brand recognition are shown by: a) its continuous and exclusive use of the PEEPS® Bunny Design for more than 45 years; 2) its impressive advertising through strong social media following, which include over 500,000 followers across various social media platforms; c) traditional media extensively covering and discussing PEEPS® brand products; d) its sales of over 150 million PEEPS® candies in the PEEPS® Bunny Design in each of the last three years; and e) the more

than 70 licensees using the PEEPS® Bunny Design on more than 400 licensed products in 2026 alone." Compl. ¶¶ 28-45. Accepting these allegations as true, Plaintiff has plausibly alleged that its Bunny Design has acquired a secondary meaning. While, as discussed in the Court's opinion denying Plaintiff's motion for a preliminary injunction dated August 27, 2026, the Court has substantial concerns as to the weight of the evidence supporting Plaintiff's commercial strength of the trade dress, the Court is nevertheless not persuaded that Plaintiff has not plausibly alleged a secondary meaning. Whether Plaintiff can ultimately establish the same is more appropriately resolved on a fully developed record.

Likewise, the Court is satisfied that Plaintiff has adequately pleaded a likelihood of confusion.[1] The Complaint contains sufficient factual allegations in support of each of the relevant *Lapp* factors to plausible allege a likelihood of confusion. The Court cannot conclusively resolve the question of whether Plaintiff has established a likelihood of confusion at the motion to dismiss stage. *See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 237 (3d Cir. 2000) (finding that "[t]he question of likelihood of confusion is ultimately one of fact.")

Similarly, the question of Defendants' alleged infringement of Plaintiff's packaging trade dress is not appropriate for determination on the pleadings. Plaintiff has sufficiently pled infringement of its packaging trade dress. Plaintiff identifies the packaging trade dress that it alleges has been infringed, and further alleges facts that support it claims of distinctiveness and likelihood of confusion, including allegations that Defendants' products are packaged "in white

1 While the Court, in its opinion denying Plaintiff's Motion for a Preliminary Injunction, has concluded that Plaintiff has not presented adequate evidence to demonstrate a likelihood of confusion with regard to trade dress, that was based on the evidence presented in support and in opposition to the Motion for a Preliminary Injunction. As discussed above, the Court is precluded from considering that evidence in a Motion to Dismiss.

paper trays in rectangular pastel plastic packaging with a transparent window through which a cluster of four pastel-colored marshmallow pieces can be seen", which Plaintiff alleges is substantially similar to its own product packaging trade dress. Compl. ¶¶ 135-142. Plaintiff also alleges other packaging similarities, including repeat patterns of bunny designs printed on both packages. *Id.* Accepting these allegations as true, Plaintiff has sufficiently pleaded a claim for unregistered packaging trade dress. Just as with the issue of product design trade dress infringement, packaging trade dress infringement is also a fact sensitive inquiry. An ultimate determination cannot be reached without a developed record.

Accordingly, the Court finds that Plaintiff has sufficiently pleaded its product-design and packaging trade dress claims. Thus, Defendants' Motion to Dismiss Counts III and IV is denied.

### C. Defendants Have Not Provided Any Basis for Dismissal of Plaintiff's Trademark Dilution Claims (Counts V and VI)

Under Count V, Plaintiff asserts claims for trademark dilution under 15 U.S.C. § 1125(c), and under Count VI, Plaintiff asserts claims for trademark dilution under N.J.S.A. 56:3-13.20. Although Defendants' Motion generally argues that Counts V and VII should be dismissed, Defendants do not separately address Plaintiff's dilution claims or otherwise explain why Plaintiff has failed to state a claim under 15 U.S.C. § 1125(c) or N.J.S.A. 56:3-13.20. Plaintiff argues that because Defendants failed to submit any meaningful discussion of the dilution claims alleged in the Complaint, the Court should not consider Defendants' Motion to apply to those claims. Pl.'s Opp. at 18.

The Court agrees. Defendants have not provided any basis for dismissal of Plaintiff's dilution claims under federal or state law. Accordingly, Defendants' Motion to Dismiss Counts V and VI is denied.

### D. Plaintiff Adequately Pleads Claims for Unfair Competition Under New Jersey Law (Counts VII and VIII)

Defendants argue that Plaintiff's New Jersey claims for unfair competition (Count VII and VIII) necessarily fail because Plaintiff has failed to state a claim for trademark or trade dress infringement under the Lanham Act. Defs.' Br. at 26. "[T]he elements of a claim of unfair competition under the Lanham Act are the same as for claims of unfair competition and trademark infringement under New Jersey statutory and common law." *Buying For The Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 317 (D.N.J. 2006).

As explained, *supra*, the Courts finds that Plaintiff has sufficiently pleaded its claims for trademark and trade dress infringement under the Lanham Act. Thus, Defendants' Motion to Dismiss Counts VII and VIII is denied.

## V. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss the Complaint is **DENIED**.

* * *

For these reasons,

**IT IS** on this 27th day of August, 2026

**ORDERED** that Defendants' Motion to Dismiss is **DENIED**.

*/s/ Stanley R. Chesler*

STANLEY R. CHESLER, U.S.D.J.

Dated: August 27, 2026