**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JUST BORN, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MAILLO CONFECTIONS LLC and THE SNACKATERE NJ INCORPORATED,<br><br>Defendant(s). | **Civil Action No. 26-cv-04606 (SRC)**<br><br>**OPINION & ORDER** |

**CHESLER, District Judge**

This matter comes before the Court by way of Plaintiff Just Born, Inc.'s (Plaintiff's) Motion for a Preliminary Injunction (the "Motion"), (Dkt. No. 15). Defendants Maillo Confections LLC and The Snackatere NJ Incorporated ("Defendants") opposed the motion, (Dkt. No. 33). Plaintiff filed a brief in reply, (Dkt. No. 38). The Court heard oral argument on August 12, 2026. For the reasons set forth below, the Motion will be **DENIED.**

## I. PROCEDURAL HISTORY

On April 27, 2026, Plaintiff filed a complaint against Defendants alleging infringement of Plaintiff's rights on its trademarks and trade dress under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), dilution of Plaintiff's rights in its world-famous trademarks and trade dress under the Trademark Dilution Revision Act, 15 U.S.C. § 1125(c), dilution under N.J.S.A. 56:3-13.20, and unfair competition under N.J.S.A. 56:4-1 et seq and New Jersey common law. (Dkt. No. 1).

Plaintiff moved for a preliminary injunction on July 1, 2026. (Dkt. No. 15). Defendants filed opposition on July 27, 2026. (Dkt. No. 33). Plaintiff filed a reply brief on August 3, 2026. (Dkt. No. 38).

Through its Motion, Plaintiff seeks to enjoin Defendants from allegedly continuing to misappropriate Plaintiff's registered trademarks and established trade dress in manufacturing, advertising, distributing, marketing, displaying, offering to sell, and selling goods in configurations that Plaintiff alleges are confusingly similar to its trademarks and trade dress.

## II. FACTUAL BACKGROUND

Plaintiff is a Pennsylvania corporation that has manufactured and sold PEEPS marshmallow candies since 1954. Compl. ¶¶ 18-19. Plaintiff introduced a bunny-shaped marshmallow (the "PEEPS Bunny") in 1979 and has continued to sell the product since that time. *Id.* Plaintiff owns multiple trademark registrations covering the PEEPS Bunny in connection with various goods. *Id.* at ¶ 21.

According to Plaintiff, the PEEPS Bunny consists of a simplified rounded silhouette of a front-facing bunny with a face formed of three dots and a v-shaped pair of rounded ears centrally placed on the head, and is used in commerce both as a two-dimensional mark applied to goods or their packaging and as the configuration of candy and licensed goods to indicate that they originate from or are licensed and authorized by Plaintiff. *Id.* at ¶¶ 24-25. In Count IV, Plaintiff also claims trade dress rights in its packaging which generally consists of marshmallows arranged in groups of four within a rectangular white paper tray wrapped in pastel-colored plastic packaging with a repeating bunny-shaped print and a transparent window on the right side or top through

which clusters of four candies can be seen.[1] *Id.* at ¶ 27.

Plaintiff alleges that the PEEPS Bunny has acquired widespread commercial recognition, and further alleges that Plaintiff's PEEPS brand candies are consistently the most popular non-chocolate Easter candy, and have maintained that position for two decades, with over 150 million candies in the PEEPS Bunny design sold in each of the past three years. *Id.* at ¶¶ 28-35.

In May 2025, Defendants announced via its website that they planned on launching a line of seasonal marshmallows including bunny-shaped marshmallows. *Id.* at ¶ 51. On July 1, 2025, Plaintiff sent Defendants a cease and desist letter asserting its trademark rights and objecting to the launch of the proposed bunny-shaped marshmallows. *Id.* ¶ 52. Counsel for the respective parties continued communications through November 2025 regarding Plaintiff's infringement concerns. *Id.* ¶ 53. Plaintiff alleges that it advised Defendants that any product it launches must be of a significantly modified design that is not confusingly similar to the PEEPS Bunny, and failure to do so would result in enforcement of Plaintiff's rights. *Id.* Plaintiff further alleges that Defendants ultimately made no substantial changes to design and, in January 2026, began to manufacture, distribute and sell marshmallows in a bunny shape (the "Mallow Bunny"). *Id.* ¶¶ 53-54. Plaintiff alleges that the products are sold online through Amazon and in retail stores, including Albertson, Wegmans, Price Chopper, ShopRite, independent health food stores, and other retail grocery and food stores. *Id.* ¶ 55.

Plaintiff further alleges that Defendants packaged the Mallow Bunnies in rectangular white

1 The Court notes that while the Complaint alleges that Defendants' packaging infringes its trade dress, its motion for a preliminary injunction appears to rely solely on its contention that Defendants' product design in a bunny-shaped formulation infringes its trade dress. Count IV, the packaging claim, is not asserted as the basis for any injunctive relief.

paper trays wrapped in pastel-colored packaging with a transparent window displaying four marshmallows, and that multipack versions of the product feature a repeating bunny pattern that is similar to the packing of the PEEPS Bunny. *Id.* ¶¶ 59-61. Plaintiff also alleges that at least some of the Mallow Bunnies were distributed with three-dot facial features that are similar to those appearing on the PEEPS Bunny. *Id.* ¶ 62.

Finally, Plaintiff contends that the Mallow Bunnies closely resemble the PEEPS Bunnies because both products feature a simplified rounded silhouette of a front-facing bunny with a v-shaped pair of rounded ears centrally placed on the head, are formed of white marshmallow coated with pastel-colored granulated sugar, and are of the same size and the same weight. *Id.* ¶ 67. Plaintiff argues that there are various similarities in the two products, namely that they have substantially similar visual impression, they are the same size and weight, have a similar heft and feel in the hand, and have similar colors. *Id.* ¶¶ 68-71.

Based on these alleged similarities, Plaintiff brought the instant motion seeking to enjoin Defendants from allegedly continuing to misappropriate its trademarks. Plaintiff filed the instant motion on July 1, 2026. (Dkt. No. 15). ("Pl.'s Br."). Defendants filed opposition on July 27, 2026. (Dkt. No. 33) ("Defs.' Opp."). Plaintiff filed a reply brief on August 3, 2026. (Dkt. No. 38) ("Pl.'s Rep. Br.").

## III. LEGAL STANDARD

To obtain a preliminary injunction, the moving party bears the burden of establishing that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) the public interest favors such relief. *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014).

Preliminary injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." *Id.* That burden is heavy: the movant must make a "clear showing" that it is entitled to injunctive relief. *Holland v. Rosen*, 895 F.3d 272, 285-86 (3d Cir. 2018). The movant's failure to establish any element in its favor is fatal and "renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999).

## IV. DISCUSSION

The first prong of the test for preliminary injunctions requires Plaintiff to show that it is likely to prevail at the ultimate trial on the merits. To succeed on a trademark claim, "a plaintiff must establish (1) the marks are valid and legally protectable; (2) the marks are owned by the plaintiff; and (3) the defendant's use of the marks to identify goods or services is likely to create confusion concerning the origin of the goods or services." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990). "If the mark at issue is federally registered and has become incontestible, then validity, legal protectability, and ownership are proved." *Com. Nat. Ins. Servs., Inc. v. Com. Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000).

Here, Plaintiff owns several federally registered marks, including Registration No. 4,627,913 (the "'913 Registration") for the two-dimensional version of the PEEPS bunny design, which consists of a simplified rounded silhouette of a front-facing bunny with a face formed of three dots and a v-shaped pair of rounded ears centrally placed on the head, and Registration No. 3,809,165 (the "'165 Registration") for a three-dimensional configuration of candy in the form of a bunny, consisting of a simplified rounded silhouette of a front-facing bunny with a face formed of three dots and a v-shaped pair of rounded ears centrally placed on the head (the "Bunny Design"). Compl. ¶¶ 95-97, 111-113. Defendants do not dispute Plaintiff's ownership of the

asserted Registrations. Rather, Defendants principally argue that Plaintiff's Bunny Design is not entitled to trademark protection because it constitutes an unprotectable product configuration. Defs.' Opp. at 11-13, 17. Further, Defendants argue that, even if the Bunny Design is valid and protectable, Defendants' use of the Bunny Design is not likely to cause confusion, thus Plaintiff is unlikely to succeed on the merits. *Id.* at 17-26.

Functional features in a product cannot be protected as trade dress or a trademark. 15 U.S.C. § 1115(b). "The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164 (1995). "[I]n general terms, a product feature is functional, and cannot serve as a trademark, if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*, 655 F. App'x 103, 109 (3d Cir. 2016) (citing *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 24 (2001)).

The Court need not decide whether Defendants are likely to succeed on their functionality defense at this preliminary stage. The parties' dispute concerning functionality raises factual questions that are more appropriately addressed after discovery; as the record remains undeveloped, this issue is not ripe for discussion. Instead, the Court proceeds to the issue of likelihood of confusion.

In determining whether such confusion is likely, the Court considers the ten nonexclusive factors set forth in *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460 (3d Cir. 1983), as refined by *Versa Products Co. v. Bifold Co.*, 50 F.3d 189 (3d Cir. 1995). The *Lapp* factors used to determine whether there is a likelihood of confusion between marks are the: (1) degree of similarity between

owner's mark and alleged infringing mark; (2) strength of owner's mark; (3) price of goods and other factors indicative of care and attention expected of consumers when making a purchase; (4) length of time defendant has used mark without evidence of actual confusion arising; (5) intent of defendant in adopting the mark; (6) evidence of actual confusion; (7) whether goods, competing or not competing, are marketed through same channels of trade and advertised through same media; (8) extent to which targets of parties' sales efforts are the same; (9) relationship of goods in minds of consumers, whether because of near-identity of products, similarity of function, or other factors; and (10) other facts suggesting that consuming public might expect prior owner to manufacture both products, or expect prior owner to manufacture a product in defendant's market, or expect that prior owner is likely to expand into defendant's market. *Lapp*, 721 F.2d at 463. The Court need not mechanically apply each of the *Lapp* factors, as the weight and relevance of each factor depends on the particular circumstances of the case. *See Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 476 (3d Cir. 1994) (holding "the weight given to each factor in the overall picture, as well as its weighing for plaintiff or defendant, must be done on an individual fact-specific basis. Not all of the factors are present in every case.").

As to the degree of similarity between the owner's mark and the alleged infringing mark, the Court is satisfied that the overall impression created by Plaintiff's product design and Defendants' product design and configuration are similar: a simplified rounded silhouette of a front-facing bunny and a v-shaped pair of rounded ears centrally placed on the head. Compl. ¶ 24.

This, however, does not dispose of the matter where the alleged infringement relates to product design. In such cases, the similarity in design can be negated by appropriate labelling,

packaging and advertising. Here, Plaintiff's contention that the products are confusingly similar is substantially negated by the fact that Defendants' brand name is so prominently displayed on the packaging. Plaintiff cannot establish that consumers would mistake Defendants' clearly displayed Good Mallow confectionaries for Plaintiff's PEEPS products as Defendants' products are clearly distinguishable with large labels and a distinct font. This "clarity of labeling in packaging and advertising will suffice to preclude almost all possibility of consumer confusion as to source stemming from the product's configuration." *Versa*, 50 F.3d at 203; s*ee also Bose Corp. v. Linear Design Labs, Inc.*, 467 F.2d 304, 309 (2d Cir. 1972) (finding that "[t]he presence of name on the product goes far to eliminate confusion of origin."); *Id.* at 310 (also finding that "there is hardly likelihood of confusion or palming off when the name of the manufacturer is clearly displayed."). Indeed, the advertising for Defendants' products clearly and boldly identifies Good Mallow as the source of the products, and negates any substantial likelihood of confusion as to the source of the same. Thus, this factor weighs strongly in favor of Defendants.

As to the strength of the owner's mark, although Plaintiff argues that its Bunny Design is commercially strong, the record supporting that contention is considerably less persuasive than Plaintiff suggests. Although Plaintiff identifies extensive advertising, substantial sales, widespread licensing, and the overall popularity of the PEEPS brand generally, those facts demonstrate the commercial success of the PEEPS brand as a whole. Plaintiff fails to adequately present facts that demonstrate the commercial strength of the Bunny Design, the specific mark at dispute. Plaintiff has indicated what portion of its retail sales of PEEPS marshmallows from the 2022 to 2026 Easter seasons were sales attributed to marshmallows in the Bunny Design, but the remaining information provided by Plaintiff lumps together advertising, licensing, broadcast

mentions, and overall numbers in revenue that can be attributed to the PEEPS brand generally. Domalewski Cert. ¶¶ 7-13, 17-22, 29. Absent from Plaintiff's submissions is evidence isolating the Bunny Design from the PEEPS brand generally. Thus, while the Court does not question the commercial success of Plaintiff's products broadly, the present record fails to provide sufficient evidence to support the commercial strength of the Bunny Design as an independent source identifier. The strength of a mark rests on the extent to which "a significant portion of the relevant consuming public . . . recognizes the mark as a source indicator." *Joseph Phelps Vineyards, LLC v. Fairmont Holdings, LLC*, 857 F.3d 1323, 122 USPQ2d 1733, 1734 (Fed. Cir. 2017) (citing *Palm Bay Imps. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1694 (Fed. Cir. 2005)). Further, Plaintiff's contentions about the commercial strength of its product are substantially weakened by the fact that there are various similar products in the marketplace that meet Plaintiff's description of its Bunny Design, specifically a "simplified rounded silhouette of a front-facing bunny," with "v-shaped pair of rounded ears centrally placed on the head." *See* Compl. at ¶ 67. Indeed, the rabbit-shaped marshmallow sold by Sweetniks appears to be extraordinarily similar to Plaintiff's Bunny Design. Defs.' Opp.; Ex. C. Nevertheless, as defense counsel indicated at oral argument, there has been no suggestion that Plaintiff has sought to curtail the marketing efforts of other brands selling similar products. This demonstrates that the mark is not as strong as Plaintiff contends, and this factor does not weigh significantly in favor of Plaintiff.

The third and seventh factors weigh in favor of Plaintiff. Both parties' products are relatively inexpensive, low-cost confectionary items, suggesting that consumers are unlikely to exercise a high degree of care when purchasing the product. Defendants also market their product

through many of the same online and physical retail stores as Plaintiff. Defs.' Opp. at 24. The Court recognizes, however, that Defendants highlights the fact that their product is kosher and vegan and that, indeed, it is a healthy product, whereas Plaintiff explicitly indicates that its product is not kosher or vegan. For consumers specifically seeking products that satisfy those dietary restrictions, those distinctions may raise greater attention to differentiating between the products. Nevertheless, given the relatively low price of the products, the Court finds that consumers are generally unlikely to exercise a heightened degree of care. Accordingly, this factor weighs in Plaintiff's favor, albeit somewhat less strongly in light of the dietary distinctions between the PEEPS Bunny and the Mallow Bunny.

As to evidence of actual confusion and the length of time that Defendant has used the marks without evidence of actual confusion, Plaintiff's showing is weak. Plaintiff's evidence of actual confusion is severely limited, consisting of a single incident involving celebrity Paris Hilton. Although evidence of actual confusion is not required to establish a likelihood of confusion, the relevance of such evidence is significant where the central issue is whether consumers are likely to perceive Defendants' products as originating with Plaintiff. Plaintiff has been aware of Defendants' intent to market and sell its product since July 2025, and the product has been available for purchase since April of 2026. In that time, Plaintiff has not demonstrated more than one instance of actual consumer confusion, nor has Plaintiff presented survey evidence demonstrating the same. Thus, the Court finds that the single incident identified by Plaintiff does not provide a meaningful showing of actual confusion. On the present record, the fourth and sixth factors weigh in favor of Defendants.

As to the intent of Defendants in adopting the mark, this factor weighs in favor of

Defendants. Even if Defendants intended to copy aspects of Plaintiff's product configuration, an intent to copy is not equivalent to an intent to confuse consumers as to the source of the product. *Versa*, 50 F.3d at 206. Indeed, "where product configurations are concerned, we believe there is little room for deterrence if appropriate labeling and marketing are undertaken." *Id.* at 207. It is not unfair competition for someone to trade off the good will of a product. *See Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 121 (1938); it is only unfair to deceive consumers as to the origin of one's goods and thereby trade off the good will of a prior producer. *See also Duraco Products, Inc. v. Joy Plastic Enterprises, Ltd.*, 40 F.3d 1431, 1445 (3d Cir. 1994). Thus, the Court finds that this factor weighs in favor of Defendants.

Considering the *Lapp* factors as a whole, the Court concludes that Plaintiff has not demonstrated a likelihood of confusion. Although certain factors favor Plaintiff, those considerations are outweighed by the limited evidence regarding the commercial strength of the Bunny Design itself, Defendants' clear and obvious branding, and the absence of a meaningful presentation of actual confusion or survey evidence. Given the fact that Plaintiff had more than ample opportunity to conduct a survey and failed to do so, the absence of such evidence substantially affects the analysis of likelihood of confusion. Indeed, Plaintiff's "failure to conduct any confusion survey weighs against its request for a preliminary injunction." *Pharmacia Corp. v. Alcon Lab'ys, Inc.*, 201 F. Supp. 2d 335, 373 (D.N.J. 2002); *see also Eagle Snacks, Inc. v. Nabisco Brands, Inc.*, 625 F. Supp. 571, 583 (D.N.J. 1985) ("Failure of a trademark owner to run a survey to support its claims of brand significance and/or likelihood of confusion, where it has the financial means of doing so, may give rise to the inference that the contents of the survey would be unfavorable, and may result in the court denying relief.") On the present record, Plaintiff has

not shown that consumers are likely to believe that Defendants' Mallow Bunny originates with Plaintiff. In sum, Plaintiff has not demonstrated a likelihood of success on the issue of consumer confusion. Here, as in *Versa*, the "clarity of labeling in packaging and advertising will suffice to preclude almost all possibility of consumer confusion as to source stemming from the product's configuration." *Versa*, 50 F.3d at 203. This, coupled with minimal evidence of actual confusion, and the lack of any consumer survey evidence supporting likelihood of confusion, satisfies the Court that Plaintiff has not demonstrated a likelihood of success on the issue of consumer confusion.

Similarly, with regards to Plaintiff's trade dilution claims, Plaintiff also fails to establish a likelihood of success. To succeed on a dilution claim, Plaintiff must prove (1) that it owns a mark that qualifies as a "famous" mark in light of the totality of the eight factors listed in § 1125(c)(1); (2) that Defendants are making commercial use in interstate commerce of that mark; (3) Defendants' use began after Plaintiff's mark became famous, and; (4) Defendants' use causes dilution by lessening the capacity of the plaintiff's mark to identify and distinguish goods or services. *Times Mirror Mags., Inc. v. Las Vegas Sports News*, L.L.C., 212 F.3d 157, 163 (3d Cir. 2000). A mark is only famous when it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." *Vista India v. Raaga*, LLC, 501 F. Supp. 2d 605, 623 (D.N.J. 2007) (citing *Green v. Fornario*, 486 F.3d 100, 105 (3d Cir.2007)). "This is a rigorous standard, as it extends protection only to highly distinctive marks that are well-known throughout the country." *Id.*

As Defendants correctly point out, the vast majority of the evidence cited by Plaintiff in support of its argument that the Bunny Design is famous merely regards PEEPS brand candies

generally, not products specifically incorporating the Bunny Design. For instance, Plaintiff refers to a study that found the PEEPS brand candy was the most popular Easter candy. Pl.'s Mot. at 3-4 (citing Domalewski Decl. ¶ 12). However, even if true, that study is not specific to candies incorporating the Bunny Design. Again, Plaintiff cannot rely on the alleged fame of its PEEPS house mark but, rather, must prove fame of the Bunny Design. Further, Plaintiff largely emphasizes the fame of the Bunny Design within a limited market: Easter candy. However, the standard of whether a mark is famous considers whether the mark is "well-known throughout the country by the general consuming public, regardless of the relevant consuming public." *Vista,* 501 F. Supp. 2d at 623. Plaintiff's attempts to use the sums it has spent on advertising, marketing, and promotions of the PEEPS brand as a whole and the popularity of the Bunny Design within the Easter candy market are insufficient to prove that it is famous. The Court finds that Plaintiff has failed to convincingly demonstrate a likelihood of success on its trademark dilution claim.

Thus, because Plaintiff has failed to demonstrate that Defendants' products are likely to create confusion as to their source of origin, the Court finds that Plaintiff has not met its burden of demonstrating its likelihood of success on the merits. Because Plaintiff has failed to meet the first prong of its motion seeking injunctive relief, and failure to meet any prong of the test is fatal to the movant's challenge, the Court need not consider the remainder of the test for a preliminary injunction. *NutraSweet Co.*, 176 F.3d at 153. Accordingly, Plaintiff's Motion is **DENIED**.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for a Preliminary Injunction is **DENIED**.

* * *

For these reasons,

**IT IS** on this 27th day of August, 2026

**ORDERED** that Plaintiff's Motion for a Preliminary Injunction is **DENIED**.

*/s/ Stanley R. Chesler*

STANLEY R. CHESLER, U.S.D.J.

Dated: August 27, 2026